I'm Andrew Weil, W-E-I-L-L, of Benjamin, Weil & Masur, appearing on behalf of the appellants in this action. The issue on this appeal is straightforward. There was admitted negligence in the preparation of a real estate contract which exposed you. I'm sorry. I just didn't hear you. I'm sorry. There was admitted negligence by the attorney. Well, where was their negligence admitted? The negligence is admitted, frankly, in the response brief. It is admitted and was admitted, first of all, in testimony by the broker. Well, it was a mistake not to do that. Well, yes, but a mistake not to do it, a mistake can mean all sorts of things. A mistake can mean – it's a big mistake to have done anything that got me into this deposition jam and gotten on the short end of a lawsuit. She certainly doesn't say that what she did was below the standard of care. So I don't see how you can read that much baggage into mistake. Well, I think the term mistake, oversight, I think that they – that those are admitted, taken in combination with the fact that as a direct result, you know what the consequence was of the failure to check the boxes in this – in this situation and the failure to include subject to language, because we have the letter from the Sellers counsel saying, please note that you did not select paragraph C-24. Well, sure. The counsel can write anything he wants to. I mean, he's a good lawyer. And that's exactly the point, Your Honor. They can raise what they want to. However, it is not – I think that that overstates it, because that counsel for the Seller could not have said you didn't check box C-24 if box C-24 had been checked. Counsel for the Seller could not have said you omitted the subject to language had the subject to language been included, and it was not. Well, but if there – if there is a clear contingency in C-1, C-24, 25 are gravy. I mean the – Your Honor, the – if there is a – when you say if there is a clear contingency, I think that that misstates the necessary standard here, which is were the appellants subjected to a risk of litigation, a risk of a claim, that was the point. Let me ask you something, Mr. Wiles. Do you – are you seriously contending that any time a lawyer or a real estate agent drafts a proposed agreement that results in a lawsuit that because of a lawyer's claim that there's a basis to sue on account of the fact it wasn't perfect, that the lawyer is told, I want a financing contingency in an agreement, if the lawyer could say it is right to sue on account of the fact that there's a basis to sue on  is foreseeable that if I don't put in certain language in that agreement that it spells out the financing contingency, and as a result of those omissions that the client is subjected to a claim, yes, I very much believe that the lawyer has liability and that's exactly the teaching of Sindel, Gustafson. You're saying that the plaintiff – that I should say the defendant had a duty not to create an ambiguous contract. That had a duty not to create a contract ambiguous on this issue, financing contingency, where the defendant was told, we've got to have a financing contingency, where the – Do you have Hawaii cases that create this kind of duty, not to create an ambiguity? On – Hawaii cases on what creates an ambiguity? No. On whether there is – realtors have a duty not to create an ambiguous kind of – that's an enforceable duty. I would – the – I'm – let me look and see exactly what I have. I have – I remember that I cited two cases regarding the general fiduciary duty of a broker, and we – and I don't know that I have anything that said specifically avoid an ambiguity. I would suggest, though, that most certainly that if a – that if any buyer says put in the correct price, that the broker failing to put in the correct price reaches a duty. Let me ask you this. In the absence of a case, did you have any – did you submit anything to the district judge or the magistrate judge that says it's beneath the standard of care to create a – a contract such as this? I believe – yes, I believe we did, Your Honor. I believe, number one, that with regard to the standard of care, that we believe, first of all, that we had, if nothing else, the testimony of the seller's broker who said she had never heard of anybody not using – checking paragraphs C-24 and C-25. She couldn't imagine any reason why. Yes, and she had no doubt that the financing contingency – there was a financing contingency. Until she thought – she thought there was until she was pointed out to her those boxes weren't checked. Well, yes, but the point is, there's – there's – there is no evidence from anybody that when you create a financing contingency in handwriting, that that doesn't trump whatever form agreement may also exist that also could have created a contingency. Your Honor, I agree that it would – would have been possible for the broker to have created a financing contingency by handwriting. As a matter of fact, that's what the broker did do in the first offer. The problem was that then there was a subsequent new offer which didn't include the handwritten language that the broker had carefully inserted in the first version. Well, it said by way of a mortgage acceptable to the buyers. I mean, what in just plain English does that mean other than the buyers have got to get a mortgage that's acceptable to them, because that is the way by which $2 million, the cash component, is going to be obtained? Your Honor, I would suggest there is a huge, huge difference, and one which Seller's Counsel took full advantage of and was entitled to take full advantage of, between language which says we are now changing our earlier offer where we said this was subject to our ability to gain this financing, and instead we're going to put in language that the buyer is going to get the financing that's acceptable to them. That's a very different term, and that taking out of the subject-to language was recognized, and I believe properly so by the district court, as creating the problem in this case. And that was a huge issue. That was taken out. Had it been left in, we would have had a different issue. Why didn't the broker leave it the way it was in the beginning? And then you would be correct, Your Honor, that that would have trumped, that would arguably have trumped C the failure to check C-24. Unfortunately, the appellants got subjected to a double whammy here. They got subjected to the fact that that subject-to language was taken out and the boxes were not properly checked. So whatever you're saying is that the real problem was the change in the handwriting, if I'm hearing you right. I think that if there had been, whatever the same thing. What if the handwriting had stayed the same? Then you can see that there is no problem with not having checked 24? I'm not prepared to say that. I think that it would be reasonable to do that. Well, I mean, which is it? I mean, I'm saying that we could. I think that any of the failures, frankly, I think the failure to check the right hand and saying this is a financing contingency is pretty clearly a big problem, create a foreseeable risk deviated from the standard of care. I think that I probably would take the position, yes, that was a breach in and of itself. That's sufficient. I don't have to, in this case, rely upon that alone because we also have the subject to language being pulled out of it, which the district court immediately recognized as being a problem. And it tried to get around that issue by analyzing from the point of view with, at the end of the day, after you argue it all the way through, if there had been litigation, that ultimately the appellants would have won. And our point in this appeal was that that's the wrong standard. That's not the point. The damage that was done was the subjecting of the appellants to the increased risk of litigation to a claim that could have been avoided. That's exactly the point. And the efforts to get around that. It's a very, very, very interesting theory, because in the three cases, at least as I read them, that you rely on, the non-Hawaii cases, there was clear negligence on the part of the draft or. Your Honor, I thoroughly disagree with that analysis. I understand that that's what's been argued. That's exactly what these cases say you don't have to get to. No, they also had negligence. They say you don't have to worry about the part like litigating it all the way through. Well, it was either existed or assumed for purposes of the procedural posture in which the issue arose in those cases. Well, then, Your Honor, I would ask that you take the the court definitely take a look. I would disagree with that characterization, but certainly it can't be said with regard to the third-eye findings. Are you disagreeing with me that those cases didn't involve a motion to dismiss where you assumed the facts alleged in the complaint to say negligence? They assume that they do in that posture, they assume the facts, but in terms of what the court said, we don't need to. The issue of whether ultimately the finding will be whether there was coverage in the Gustafson case, whether the failure to gain the consents in the Campbell case, whether those things, whether those were done or not wasn't, and whether that was ultimately found to be negligence or not, wasn't relevant. In fact, they say that you can't put the plaintiffs in the position of having to litigate that. That's exactly what they say. And I think that that teaching comes out very blindingly clear from the third-eye blind case, which was called to the courts of Tantamount Court of Interest. So if a lawyer or a realtor drafts an agreement that results in litigation that passes, let's just say, the Rule 11 standard, that's the end of it in terms of the liability of the lawyer or the realtor? No. But if the lawyer, if the plaintiff can come in and say, I asked the lawyer to guard against this particular danger. Yeah. And the lawyer had a clear and obvious way of guarding against that danger. In fact, he put in the guard against that danger in an earlier draft, and then when he was renegotiating and redrafting it, he left it out, then I think I've got my case. Yes, I do, Your Honor. It's not just every single time. I do want to call the Court's attention and discuss briefly the third-eye blind case, which is in our 28-J letter brief, a letter to the Court. And I want to just emphasize that in that case, I think it is very instructive on the issues here. There you had a band that had dismissed one of its members. The member then sued for claiming that there was trademark infringement. And the band tendered that case to its insurer, and they discovered, to their dismay, that the insurer was claiming it's not covered, there's an exclusion. They also found out that had a different level of insurance been obtained, errors and omissions insurance, that that claim wouldn't have been made. They sued their broker. They sued the business manager, said you should have gotten us this coverage. This cost us $3 million to litigate and settle. And the court, trial court looking at it said, no, there really was a duty to defend here. And said that really the insurance policy was sufficient, and therefore threw out the case. And the court of appeals said, no, that's not the standard. The point is that had the insurance broker and the business manager obtained this clearer coverage, then there wouldn't even have been this dispute. This case is very important. Number one, it goes exactly along the same lines as we've been talking about. And, just as importantly, it is a non-legal malpractice case, which is something which the appellee makes reference to. Well, these three cases that appellants have cited are just legal malpractice cases with trial-within-trial issues. That's a – that is not the case in Third Eye Blind, and I commend that case to the attention of the court. With that, I'd like to reserve time for rebuttal, but if there are further questions at this point. Good morning. May it please the Court. Arthur Kuwaha on behalf of Defendant Appellees Meriwurl and Associates, Inc. and Meriwurl. Your Honor, I think there's a fundamental problem here in appellant's argument in adopting the Sindel cases or the Sindel-like cases, insofar that this appeal or this case was made in diversity. As we know, it's axiomatic that Federal courts apply and interpret the substantive State court law. We're here not to create new substantive Hawaii law by the adoption of what's been proposed by the appellants. Here, the appellants are asking that the court do just that, to adopt and apply the reasoning found in Sindel, Gustafson, and Kausman. Well, we've got to guess what the Hawaii Supreme Court, in effect, would do. And, Your Honor, there's no certified question with respect to the reasoning found in the Sindel case, and I'll represent to this Court that there's no like cases, and I believe that the – Well, I agree with you, Your Honor, that Hawaii Supreme Courts have, in fact, followed good law in other jurisdictions. This case, the Sindel – the reasoning in Sindel, however, is not a majority viewpoint, from what I gather. Otherwise, we would have string states on the Hill. What about these cases, Campbell and the Third Eye case that the plaintiff cites? Well, let me – let me address those cases, Your Honor. I think one thing that's consistent with respect to all of these cases is that there was a sole cause of negligence. In the legal malpractice cases, there was an omission by the attorney. In the Third Eye blind case, there was an omission by the insurance broker. Those were clear and sole causes of omissions, which created the underlining dispute between the – between the client and between a third party. But here, the district court found that there was an ambiguity in the contract. Yes, sir. Didn't the broker have a duty not to create an ambiguous contract to get him into this fix to begin with? I'll contend, and I'll submit, Your Honor, that there was no ambiguity. If you look at the total contract, and under Hawaii law, you have to interpret any contract and its whole. Suppose it is – suppose the district magistrate, Judge Kern, was correct, that it was ambiguous. If it wasn't. Doesn't that breach the – her duty to not create an ambiguous contract? I don't believe that we get to that point when we look at the contract and interpreting as the whole. When we look at the counteroffer, Your Honor, you'll still show – I'm sorry? Didn't the district judge found that there was an ambiguity in the contract. Isn't that right? That's correct. And the district court – I'm sorry. The magistrate, Judge Kern, also resolved that the ambiguity did not render the financing contingency ineffective. In fact, he found that – Yes, but she had to hire a lawyer to go prove that point. I'm – oh, she had – they had to hire a lawyer? I'm not sure that they had to hire a lawyer. I think they – the lawyer on – for the sellers was just – That goes to her damages. I'm sorry? I mean, that goes to her damage, maybe, but I mean, she got – her theory is that because the real estate broker created an ambiguity, which the district court even recognized, she's in the middle of a lawsuit, and she had to go and defend it. Well, I think the seller's attorney was crafty enough to propose that situation. However, I'll submit to the court that it was not the intention of the buyers, the appellants, in any situation, in any case, to go forward – I mean, to exercise the financial contingency. When we look at the deposition testimony that's part of the record, and I'll cite to excerpt of records from the appellees at 52-83, which is page 176 of Mr. Lloyd Butler's deposition, when asked, did you advise Mary that you wanted to cancel that transaction at that time, the response was no. I asked him, let me be more specific. Prior to issuing this – prior to issuing this June 30, 2002, letter, did you advise Mary that you wanted to invoke your financing contingency and cancel the transaction at that time? The response was, I can't recall. I asked – I follow-up question to that was, do you recall informing Ms. Wuerl that, if possible, you wanted to keep the transaction open and possibly still proceed with it? Response, yes. Was it – that was your desire? Yes. In lieu of canceling it? Yes. So I submit that, notwithstanding the status of the financing contingency, as raised by the appellants, the – the buyers, the Lloyd Butlers, the appellants, were not looking to exercise that right. Mr. – Mr. Wilde makes – makes the argument that when you have got a specific instruction from a client, regardless of whether subjecting a client to the risk of litigation in other circumstances should or shouldn't create liability, that when you've got a specific request and that request itself is not handled correctly, that's enough. What's your response to that? Well, my response, Your Honor, is that, in fact, it was handled correctly. Yes, there was an omission with respect to the checkmarks, but when we look at the subsequent counteroffer, which said that the first – the $2 million first mortgage, by terms acceptable by the buyers, that in and of itself creates a condition. Secondly, when we look at the terms contained on the second page of the counteroffer, there's a direct reference to – reference to C-25, whereby the buyers are amending the deadline for when their final approval must be submitted. Now, why would they have done that, unless for the fact that they are under the – they are creating – they are creating a financing contingency and relying on a financing contingency? We look at C-25, and we have to look at it together with C-24 of the DROA, and C-24 provides that there be a buyer's financing contingency. Now, it was up to the Lloyd Butlers, the appellants, at that – prior to the expiration of the June 30, 2002, expiration of the financing contingency, to exercise their right to cancel. Based on Mr. Lloyd Butler's testimony, that was not their intent. Scalia. Is the negligence issue distinct from the interpretation of the contract? Whether it was ambiguous? Are there two separate, distinct legal theories involved there? Well, I think it works hand-in-hand, Your Honor. In order to reach the question of whether or not a – the professional standard of care was breached, I think we have to first examine, as did Magistrate Judge Curran, to first examine whether or not there was a binding financial – financing contingency contained within the DROA and the counteroffer. As Judge Curran found, as we have argued, there was no ambiguity – I'm sorry, that there was a financing contingency, and in his eyes, although I disagreed with him, that there was no – that there was an ambiguity, that in fact, in applying Hawaii contract construction law, we look at the extrinsic evidence and the intent of the party, and there, clearly, Kathy George, the seller's broker, testified at her deposition that – that the seller and she understood, after reviewing both the DROA and the counteroffer, that there was, in fact, a financing contingency. If there was a financing contingency, is the question of whether the broker acted negligently a separate question from that? No, Your Honor, because if there was a financing contingency, that was actually the entire basis of their claim, is that there was not a financing contingency. As I submitted earlier, whether there was or was not a financing contingency appears to have been a red herring in light of the fact that Mr. Lloyd Butler has stated that they would not have canceled the transaction, it wasn't his intent to cancel the transaction, and in fact, they tried to proceed with the transaction, renegotiate the terms of the transaction so that there would be a first right of refusal, and due to the fact that there looked to be, or there was an anticipated repudiation on the part of the buyers, the seller's attorney drafted a letter in anticipation of the Lloyd Butler's failure to meet the August 1, 2002, closing deadline. Your Honors, if you have anything more, I don't have anything more. If you have any questions. Thank you. Thank you. Thank you very much, Mr. Powell. Mr. Weill. Thank you, Your Honor. I wish to speak quickly to a couple of the points that were raised. One in particular, this discussion of the idea that the appellants weren't intending to terminate the transaction or something of that sort, really, I believe, misstates the record. I was surprised when I heard that. I took a look at what the declarations in support of the motion for summary judgment say. I would simply point out that at page 9 of our opening brief, we go through the facts of what led to the termination, and that, in particular, after consultation, Mr. Lloyd Butler talked with the broker, said, let's – and then, in consultation, they said, let's write a letter saying we have this problem, let's see if they'll go along with the idea of substituting a right of first refusal if there's a chance of salvaging something out of the – out of the situation. I don't think that in any way affects the point that's being made here. The point is, is that the Lloyd Butlers didn't get the financing contingency that they needed, that they requested, that they expected, and that should have been there, and that they had been told was there. With regard to the issue of standard of care, we believe that, number one, that was raised in the moving papers below because, as I wish to call the Court's attention, the appellants also sought summary adjudication on this issue and believe that they were entitled to that. Part of the relief we have requested on this appeal is that, really, that this issue should have just simply been decided the other way. The Court got it right that ambiguity had been created and that there was a problem and then went off the wrong track saying there was a way of fixing it, and that if there had been litigation, it would have resulted. We think that having found the first step, it had made the necessary finding for the determination of liability at that stage. I would also want to call the Court's attention to one thing that I perhaps should have mentioned before. We are dealing here with the completion of a State-approved form contract. This wasn't some kind of contract which required anything more than checking of certain boxes according to a standardized practice in order to achieve. Let me just check my notes. Oh, yes. And the idea that the cases that we cited do not represent a majority view. Your Honor, they represent the only view. They're the only cases we could find that discussed cases of this sort. There is no minority view. If there is a case for a minority view or a majority view or some other view, I'd like to see them. They've never been cited by the appellees in their briefs below or at this Court. And with that, I'll submit it. Okay. Thank you very much, counsel. The matter just argued will be submitted, as are the other cases on today's calendar, and the Court will stand adjourned for the week.
judges: Rymer, Silverman, Reed